IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID JENKINS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 11-69-SLR |
| | ) |
| PHIL MORGAN, Warden, | ) |
| and JOSEPH R. BIDEN, III, | ) |
| Attorney General of the State | ) |
| of Delaware, | ) |
| | ) |
| Respondents. | ) |

David Jenkins.  Pro se petitioner.

Elizabeth R. McFarlan.  Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for respondents.

**MEMORANDUM OPINION**

January 30 , 2014
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Petitioner David Jenkins ("petitioner") is a Delaware inmate in custody at the Howard R. Young Correctional Institution in Wilmington, Delaware. Presently before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 1) For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In April 2001, petitioner was indicted on two counts of trafficking in cocaine, two counts of possession with intent to deliver a narcotic schedule II controlled substance, possession of a controlled substance within 1000 feet of a school, use of a vehicle for keeping controlled substances, use of a dwelling for keeping controlled substances, and possession of drug paraphernalia. (D.I. 12 at 1) On November 26, 2001, petitioner pled guilty to one count each of trafficking in cocaine and maintaining a vehicle for the keeping of controlled substances. He was sentenced as follows: (1) for trafficking, ten years of Level V incarceration, suspended after four years for the balance at Level III probation; and (2) for maintaining a vehicle, three years at Level V incarceration, suspended immediately for three years of probation. Petitioner moved to modify his sentence, which was denied. *Id.*

Petitioner violated his probation in 2005 and 2009. *See Jenkins v. State*, 8 A.3d 1147, 1149-50 (Del. 2010).

In January 2010, petitioner was arrested for committing four new drug charges: (1) trafficking in cocaine; (2) possession with intent to distribute cocaine; (3) maintaining a dwelling for keeping controlled substances; and (4) possession of drug paraphernalia.

See *Jenkins*, 8 A.3d at 1150. The State filed an administrative warrant listing those four charges along with a technical violation as grounds for finding petitioner in violation of his probation. Petitioner contested the warrant during a fast track violation of probation ("VOP") hearing on February 3, 2010, and a contested VOP hearing was scheduled for March 3, 3010. Petitioner's counsel requested a continuance to have additional time to review discovery. The Superior Court granted the continuance, and rescheduled the contested VOP hearing to April 14, 2010. On March 29, 2010, petitioner filed a suppression motion in the co-pending criminal case, but he did not file a suppression motion in his VOP case. *Id.*

The VOP hearing occurred on April 14, 2010. *Id.* During the hearing, the judge heard testimony from petitioner's probation officer, Officer Jeffrey Boykin, and from Corporal Dewey Stout, a detective with Delaware State Police drug unit. Officer Boykin testified about petitioner's technical violation of failing to report a change in address within seventy-two hours, explaining that petitioner reported his address as 1000 Wright Street in Wilmington (the "Wright Street" residence) but was actually living at 917 Barrett Lane in Newark (the "Barrett Lane" residence). With respect to this same technical violation, Corporal Stout testified that, during his surveillance of petitioner for drug activity, he never saw petitioner at the Wright Street residence, but observed him at the Barrett Lane residence on multiple occasions. Corporal Stout also conducted spot checks of petitioner's Wright Street residence, but never saw petitioner there. At one point Corporal Stout followed petitioner to the Barrett Lane address. The police conducted additional surveillance of the Barrett Lane address, and observed petitioner

2

at the residence and exiting from the residence.  When Corporal Stout arrested

petitioner, he found a key to the Barrett Lane residence, which he used to enter the

Barrett Lane residence.  During his search of that residence, Corporal Stout found a

lease agreement for Barrett Lane which listed petitioner as the only lessee.  *Id.* at 1150-

51.

      With respect to petitioner's new drug charges, Corporal Stout testified that a

confidential source ("CS") informed him that petitioner was selling cocaine.  *Id.* at 1151.

Based on that information, Corporal Stout conducted two "controlled buys" by the CS

from petitioner.  The substance the CS turned over from the first controlled buy field-

tested positive for cocaine.  After the second controlled buy, Corporal Stout met with the

CS, who again turned over "an amount of cocaine."  *Id.*  With the evidence from the two

controlled buys, Corporal Stout obtained a warrant to search the Barrett Lane

residence.  During his search, Corporal Stout found the aforementioned lease

agreement bearing petitioner's name;  34.1 grams of powder cocaine, separated into

three bags; a small digital scale; a cocaine press; a bottle of inositol (a common additive

to powder cocaine); and $2,715 in cash.  *Id.*

      At the end of the April 14, 2010 VOP hearing, the Superior Court determined

there was "ample evidence to find the defendant guilty of violating his probation by

delivering controlled substances by trafficking," and reimposed all of the suspended jail

time from petitioner's 2001 convictions for trafficking and maintaining a vehicle.  *Id.* at

1151.  On June 7, 2010, the Superior Court granted the suppression motion petitioner

had filed in the co-pending criminal case and dismissed all of the charges in that case. *Id*.

Petitioner appealed his revocation of probation, and the Delaware Supreme Court affirmed the Superior Court's decision on December 6, 2010. *See Jenkins*, 8 A.3d 1147.

Petitioner timely filed a § 2254 application in this court. (D.I. 1) The State filed an answer (D.I. 12), arguing that all of the claims asserted therein fail to warrant relief under § 2254(d).

## III. STANDARD OF REVIEW

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when

4

a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner contends that his due process rights were violated during his 2010 VOP proceeding because: (1) he did not receive written notice of his probation violations via his charging document; (2) there was insufficient evidence of the independent January 2010 drug conduct to support the Superior Court's judgment; and (3) the VOP court did not provide any written statement of the evidence relied upon and the reason for the decision to revoke probation. Petitioner presented these claims to the Delaware Supreme Court on direct appeal. The Delaware Supreme Court reviewed the Superior Court's decision for plain error pursuant to Delaware Supreme Court Rule

5

8 because petitioner did not raise these arguments during his VOP hearing.[1]  The State,
however, does not assert that the Delaware Supreme Court's application of Rule 8
constitutes a procedural bar precluding the court from reviewing the merits of
petitioner's claims.[2]  Rather, the State contends that the court must deny the claims
under § 2254(d) because the Delaware Supreme Court's decision did not involve an
unreasonable application of Supreme Court precedent.  Given the State's failure to
enforce its own procedural bar, the court will review the Delaware Supreme Court's
decision under § 2254(d) to determine if it is contrary to, or involved an unreasonable
application of, clearly established federal law.  *See Moore v. DiGuglielmo*, 489 F. App'x
618, 623 (3d Cir. 2012).

It is well-settled that a revocation of probation hearing is not a stage of a criminal
prosecution requiring "the full panoply of due process rights accorded a defendant at a
criminal trial."  *Carchman v. Nash*, 473 U.S. 716, 725 (1985).  However, a revocation of
probation hearing is subject to the following minimum requirements of due process:  (1)
written notice to the probationer of the claimed probation violations; (2) disclosure of the
evidence against him; (3) an opportunity for the probationer to be heard in person and
to present witnesses and documentary evidence; (4) a neutral hearing body; (5) a

---

[1]*Jenkins*, 8 A.3d at 1151-52.

[2] By applying the procedural bar of Rule 8, the Delaware Supreme Court articulated a
"plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984), that its decision
rested on state law grounds.  This court has consistently held that Delaware Supreme
Court Rule 8 is an independent and adequate state procedural rule precluding federal
habeas review absent a showing of cause for the default, and prejudice resulting
therefrom, or that a miscarriage of justice will occur if the claim is not reviewed.  *See
Campbell v. Burris*, 515 F.3d 172, 182 (3d Cir. 2008).

6

written statement by the factfinder as to the evidence relied on and the reasons for revoking probation; (6) the right to cross-examine adverse witnesses unless the hearing body finds good cause for not allowing confrontation; and (7) the right to effective assistance of counsel. *See Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973).

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the Delaware Supreme Court correctly identified the *Gagnon* standard applicable to petitioner's claims regarding the alleged due process violations that occurred during his 2010 VOP proceeding.  Thus, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied the *Gagnon* standard to the facts of petitioner's case.  The court will review the three claims in seriatim.

## A. Claim One:  No Written Notice of Probation Violations

In claim one, petitioner contends that he did not receive fair notice of the charges forming his alleged violation of probation because he did not receive a copy of the charging document, i.e., the administrative warrant.  (D.I. 1 at 6-9)  In support of that argument, he asserts that the Delaware Superior Court docket only demonstrates that the State filed the administrative warrant and the VOP report, but does not demonstrate his receipt of either.  (D.I. 15 at 3)  Petitioner also asserts that, "even if [he] was aware of the VOP for a new charge," neither the administrative warrant nor the VOP report

7

listed the uncharged misconduct of two controlled buys and two dirty urine screens as

forming the basis for his violations. Therefore, he could not foresee having to defend

against the allegations regarding the two controlled buys and the dirty urine screens. *Id.*

at 7-11.

According to petitioner's administrative warrant, dated and filed January 8, 2010,

petitioner violated probation conditions one, five, and seven:

> Condition #1: On 1/8/10, [petitioner] was arrested by the Delaware State
> Police for Trafficking Cocaine, Possession with Intent to Deliver Cocaine,
> and Maintaining a Dwelling. The date of the offenses was 1/7/10 and did
> occur during the probationary period in this case.
>
> Condition #5: [Petitioner] has been reporting to Probation and Parole that
> he is residing at 1000 Wright St., Wilmington, DE 19805. The Delaware
> State Police executed a search warrant at 917 N. Barrett Ln., Newark, DE
> 19702 and found evidence that [petitioner] resides at that address such as
> a lease agreement in his name to that residence and bills with his name
> on them to that address.
>
> Condition #7: On 1/7/10, the Delaware State Police executed a Search
> Warrant on [petitioner's] residence at 917 N. Barrett Ln., Newark, DE
> 19702 and seized 34 grams of powder cocaine and a cocaine press.

(D.I. 14 at 13) In turn, the violation of probation report, dated January 11, 2010 and filed

January 25, 2010, sets forth probation conditions one and five as being violated:

> 1 You must not commit a new criminal offense or moving motor vehicle
> offense during the supervision period. This includes the charges of
> Escape after Conviction, Escape 3rd and motor vehicle offenses.
> [Petitioner] was arrested by the Delaware State Police on 01-08-10 for
> the following offenses: Trafficking in Cocaine 10-50 Grams, PWITD a
> Narcotic Schedule II CS, Maintaining a Dwelling for Keeping CS, and
> Possession of Drug Paraphernalia. All charges are currently pending.
>
> 5 You must report any changes of residence and/or employment within
> 72 hours to your supervising officer.
> [Petitioner] reported his address to Probation as 1000 Wright St,
> Wilmington DE 19805. This was verified during an office visit on 12-
> 09-09. The Delaware State Police executed a search warrant on 01-

8

> 07-10 at 917 Barrett Lane Newark, DE 19702 and found evidence that
> [petitioner] was residing at that location and not his reported address in
> Wilmington. During the search, Officers found a lease with
> [petitioner's] name on it and bills with his name on them which were all
> for 917 Barrett Lane Newark DE 19702. [Petitioner] did not advise this
> Officer of any change in residence within 72 hours as required.

(D.I. 14 at 18)

A "person's right to reasonable notice of a charge against him . . . [is] basic in our

system of jurisprudence." *In re Oliver*, 333 U.S. 257, 273 (1948). It is well-settled that

due process requires an accused to be informed of the specific charge against him,[3]

and that reasonable notice "sufficiently apprises the defendant of what he must be

prepared to meet." *Russell v. United States*, 369 U.S. 749, 763 (1962). However, the

Supreme Court has never held that "the only constitutionally sufficient means of

providing the notice required by the Sixth and Fourteenth Amendments is through the

charging document." *Hartman v. Lee*, 283 F.3d 190, 195 (4th Cir. 2002). Indeed,

federal courts considering the issue have held that the due process notice requirement

may be satisfied even if the indictment or information was deficient so long as the

defendant received actual notice of the charges against him and the inadequate

indictment did not lead to a trial with an unacceptable risk of convicting the innocent.

*See Hartman*, 283 F.3d at 195; *Parks v. Hargett*, 1188 F.3d 519 (Table), 1999 WL

157431 (10th Cir. Mar. 23, 1999); *Hulstine v. Morris*, 819 F.2d 861, 864 (8th Cir. 1987).

And, in federal revocation of supervised release proceedings, the Third Circuit has held

that a probation officer's petition and report for revocation satisfies the written notice

requirement under Federal Rule of Civil Procedure 32.1 (which incorporates *Gagnon*'s

---

[3]*See Cole v. Arkansas*, 333 U.S. 196, 201 (1948).

minimal due process standard).  *See United States v. Littlejohn*, 508 F. App'x 123, 128
(3d Cir. 2013);  *United States v. Barnhart*, 980 F.2d 219, 223 (3d Cir. 1992).  In sum, in
order for notice to be effective, "it need only assure that the [probationer] understands
the nature of the alleged violation."  *United States v. Sistrunk*, 612 F.3d 988, 992 (8th
Cir. 2010).

Here, petitioner's VOP report explicitly asserts that petitioner violated conditions
one and five of his probation.  The report also describes the violation of condition one as
resulting from petitioner's January 8, 2010 arrest for committing four new drug offenses,
and his violation of condition five as resulting from his failure to report his change in
residence.  (D.I. 14 at 12)  As explained later in this opinion, these two violations were
the focus of the petitioner's April 2010 VOP hearing.  Therefore, even if petitioner did
not receive a copy of the administrative warrant, a reasonable application of the
aforementioned legal principles demonstrates that petitioner's due process right of
"written notice" was satisfied if petitioner received a copy of the VOP report prior to the
April 2010 VOP hearing.[4]

---

[4]The Superior Court docket clearly demonstrates that the State filed the
administrative warrant and the VOP report, along with a service request, but does not
indicate if service of either document was completed.  However, other circumstances in
this case indicate that petitioner received a copy of the VOP report.  For instance, when
petitioner appealed his probation revocation, he argued that his due process rights were
violated because he did not receive a copy of the administrative warrant, (i.e., the
charging document), but he did not argue that he did not receive a copy of the VOP
report.  Indeed, petitioner has never explicitly stated that he did not receive a copy of
the VOP report, and his present contention that the Superior Court docket entry
reflecting the State's filing of the VOP report does not prove his receipt of the report
does not constitute an explicit statement that he did not receive the VOP report.  Finally,
given petitioner's substantial prior experience with Delaware's probation revocation
procedures, the court finds it highly unlikely that petitioner would not have objected to

10

Nevertheless, the court will neither imply adequate (or inadequate) written notice from a record which does not indicate exactly how petitioner was given notice of the charges, nor dwell any further on the issue of written notice. Rather, the court will directly proceed to its inquiry into whether the Delaware Supreme Court reasonably applied clearly established federal law in holding that petitioner's actual notice of the charges against him satisfied the due process notice requirements for his revocation of probation hearing.

The first issue before the court is whether the Delaware Supreme Court reasonably determined the facts when it concluded that petitioner had actual notice of the nature of the charges against him. See § 2254(d)(2). The Superior Court docket shows that an administrative warrant was filed on January 8, 2010, and the corresponding Safe Streets docket shows that an "OSSVOP Hearing" was held on that same date. (D.I. 14 at 7, 12)  The VOP report was filed on January 25, 2010, at which time a Fast Track VOP Hearing was scheduled for February 3, 2010. (D.I. 14 at 7)  At the Fast Track VOP Hearing on February 3, 2010, petitioner's contested VOP hearing was scheduled for March 3, 2010. (D.I. 14 at 7)  On March 3, 2010, the contested VOP hearing was continued to April 14, 2010 because petitioner needed more time to review discovery. Id. And finally, on March 23, 2010, petitioner moved to suppress evidence in his co-pending criminal case. Notably, nothing in this record suggests, and petitioner does not assert, that he was not present at the OSSVOP hearing on January 8, 2010 or the Fast Track VOP hearing on February 3, 2010. Pursuant to the general procedure

his alleged unawareness of the charges against him during the VOP hearing, or that he had never been provided with a copy of the VOP report.

11

for fast track proceedings set forth in the Superior Court's Criminal Case Management

Plan and recounted below, petitioner would have been informed of his alleged probation

violations:

> Offenders who are on probation to Superior Court and are arrested on new
> Superior Court charges will be placed on Superior Court's fast track calendar to
> attempt to resolve both the violation and new charges before the Fast Track
> judge. The fast track hearing will be considered the ICR (initial case review). If
> the new charges are not resolved by plea or otherwise at the fast track hearing,
> they will be scheduled for a contested violation of probation hearing and FCR
> (final case review) on a Thursday or Friday afternoon calendar. The contested
> hearing date will also constitute an FCR for the case and it will be promptly
> assigned a trial date thereafter.

Superior Court New Castle County, Criminal Case Management Plan, Section H,

http://courts.delaware.gov/Superior/governance2.stm#plans. In addition, the record

does not reveal, and petitioner does not assert, that the discovery provided to counsel

prior to the April 2010 hearing failed to include the VOP report.

In turn, the transcript of the VOP hearing demonstrates that the two violations

asserted in the VOP report were, in fact, the focus of the VOP hearing. At the beginning

of the hearing, the Superior Court judge acknowledged that the four new drug charges

constituted one basis for petitioner's alleged probation violation. The judge then asked

Officer Boykin if there were any additional reasons for asserting that petitioner had

violated his probation. (Id. at 84) Officer Boykin stated that the only additional

violations in the case were petitioner's failure to report a change in address and his two

dirty urine screens for marijuana. Id. However, neither Officer Boykin nor Corporal

Stout mentioned the dirty urine screens in their subsequent testimony. Rather, Officer

Boykin's testimony focused on petitioner's failure to report a change in address, and

Corporal Stout's testimony focused on petitioner's conduct leading up to his arrest for

12

the four new drug charges (one of which was trafficking in cocaine), as well as the

evidence showing that petitioner resided in the Barrett Lane residence.  At the

conclusion of the revocation hearing, the trial judge held that there was ample and

uncontradicted evidence demonstrating that petitioner violated his probation "by

delivering controlled substances by trafficking."  (D.I. 14 at 89)

Finally, the court notes that petitioner's first revocation of probation in 2005

occurred because he had been arrested on new drug charges. *See Jenkins v. State*,

903 A.2d 323 (Table), 2006 WL 1911096 (Del. July 10, 2006).  Given this prior personal

experience, petitioner should have understood that any new arrest would constitute a

violation of his probation.  Significantly, petitioner has never asserted that he was

unaware that his January 2010 arrest was for having committed four new drug offenses,

and the fact that petitioner's criminal proceeding for those four new drug charges was

pending simultaneously with his revocation of probation proceeding indicates that he

had full knowledge of the charges.

Given this record, the court concludes that the Delaware Supreme Court

reasonably determined that petitioner had actual notice of his probation violations prior

to the April 14, 2010 VOP hearing.  The next question is whether the Delaware

Supreme Court reasonably applied clearly established federal law in holding that such

notice satisfied the minimal due process requirements accorded a probation revocation

proceeding.

The Supreme Court has not explicitly considered whether a probationer's actual

notice of his probation violations can satisfy the written notice requirement for probation

revocation proceedings.  Nevertheless, the circumstances of petitioner's case

13

demonstrate that he was given adequate actual notice of the potential probation violations so that he could prepare his defense, satisfying the federal constitutional requirements of due process.  Moreover, petitioner has not demonstrated any prejudice resulting from the lack of written notice, because he has not explained how he would have defended himself differently at the VOP hearing if he had received written notice of the probation violations.  As such, the court will deny claim one because it cannot conclude that the Delaware Supreme Court acted unreasonably when it held that petitioner's due process rights were satisfied by his actual notice.

### B.  Claim Two: Insufficient Evidence

In claim two, petitioner contends that "the decision to revoke his probation rested on impermissible grounds and was not supported by the evidence."  (D.I. 1 at 10) Petitioner asserts that his revocation was impermissibly premised on the two controlled buys and the two dirty urine screens because he was not formally charged with violating his probation on these grounds.  He also asserts that there was insufficient evidence to revoke his probation because "not one piece of documentary evidence" (i.e., administrative warrant, VOP report, police report, indictments, discovery, lab report, trier agreement) was admitted during the VOP hearing.  (D.I. 15 at 8)  Both arguments are unavailing.

#### 1.  Impermissible uncharged misconduct

As previously discussed, Officer Boykin and Corporal Stout did not provide any testimony about petitioner's dirty urine screens.  In turn, the Superior Court did not mention petitioner's dirty urine screens when it revoked his probation.  Thus, the court

14

rejects as meritless petitioner's argument that his revocation was impermissibly based on his dirty urine screens.

Petitioner's contention that his probation revocation was improperly premised on the two uncharged controlled buys is similarly unavailing. In Delaware, probation can be revoked solely upon the basis of testimony from a witness who has "first-hand knowledge of the events constituting the violations." *Collins v. State*, 897 A.2d 159, 160-61 (Del. 2006). The non-technical basis for alleging that petitioner had violated his probation in this case was the fact that he was arrested on four new drug charges. Petitioner's arrest on the four new drug charges was the direct consequence of the two controlled buys arranged by Corporal Stout. Notably, during the VOP hearing, petitioner did not object to Corporal Stout's testimony concerning his first-hand observations of, and personal knowledge about, those buys. Given the direct relation between petitioner's arrest and the controlled drug buys, the court rejects as meritless petitioner's contention that the controlled drug buys were impermissibly considered in revoking his probation.

### 2. **Insufficient evidence**

A revocation of probation satisfies the due process clause as long as the revocation decision is supported by "some evidence." *See Douglas v. Buder*, 412 U.S. 430 (1973)(the question is whether the "finding that [the probationer] violated the conditions of his probation . . . was so totally devoid of evidentiary support as to be invalid under the Due Process Clause of the Fourteenth Amendment.") "Ascertaining whether [the "some evidence"] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the

15

evidence.  Instead, the relevant question is whether there is any evidence in the record to support the conclusion reached by the [court]." *Sup't, Mass. Corr. Ins., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985).

During the VOP hearing, Officer Boykin testified about petitioner's failure to report his change in residence.  Corporal Stout testified about his firsthand observations of petitioner's drug activity that led to his arrest on four new drug charges.  During his testimony, Corporal Stout described how he personally conducted most of the surveillance leading to petitioner's arrest on the new drug charges, how he personally observed petitioner at the Barrett Lane residence on several occasions, and how he led the search of the Barrett Lane residence during which the lease agreement, cocaine, and drug paraphernalia were found.  During the VOP hearing, petitioner did not provide any evidence to contradict either officer's testimony.

Given this record, the court concludes that the Superior Court's decision to revoke petitioner's probation satisfied the "some evidence" standard.  As such, the Delaware Supreme Court did not unreasonably apply clearly established federal law in holding there was sufficient evidence to support the Superior Court's revocation decision.  Accordingly, the court will deny claim two.

### C.  Claim Three:  Written Statement of Decision

In his final claim, petitioner contends that his due process rights were violated because the VOP court did not provide a written statement of decision explaining the evidence relied upon.  However, the majority of circuit courts considering this issue have held that the "written reason" component of the procedural due process requirement in revocation hearings is satisfied by a transcribed oral finding of revocation

if the transcript and record enable the reviewing court to determine the basis for revocation. *See United States v. Copley*, 978 F.2d 829, 831 (4th Cir. 1992)(collecting cases); *United States v. Barnhart*, 980 F.2d 219, 223 n.3 (3d Cir. 1992).

Here, at the end of the VOP hearing, the State summed up its argument by stating that it was not even "a close case," because petitioner "gave a bogus address to his probation officer," he "leased another apartment far away from 1000 Wright Street in Wilmington, Delaware," and he was "conducting drug transactions." (D.I. 14 at 88)  The Superior Court judge agreed, concluding that there was "ample evidence to find [petitioner] guilty of violating his probation by delivering controlled substances by trafficking; it's crystal clear and uncontradicted." *Id.* These statements are clearly reflected on the transcript of the VOP hearing. As such, the court concludes that the transcription of the Superior Court's oral revocation decision satisfies the due process requirement of "some written statement," especially when the judge's transcribed statement is viewed in context with the rest of the state court record. Accordingly, the court will deny claim three, because the Delaware Supreme Court's rejection of this claim was a reasonable application of federal law.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

17

Further, when a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For the foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254. An appropriate order will be entered.